JOSÉ CASTAÑER FONT, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, AGUADILLA PART, WILLIS RAMOS VÁZQUEZ, JUDGE, Respondent.

No. 2313. Submitted February 29, 1960.—Decided June 10, 1960.

*Ángel Manuel Ciordia* for the petitioner.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Aguadilla Part of the Superior Court of Puerto Rico refused to probate a holographic will, which copied verbatim reads thus:

"7/4/55

"I, Adele Bandler Castañer, married to José Castañer and residing in Borinquen Road of Aguadilla, post office box 762, declare that this is the only will that I have executed, and which reads as follows:

"1. At my death, I bequeath all my property in Borinquen Road, consisting of 3 houses and 38 hundredths of a cuerda of land, this property being free from encumbrances and debts of any kind whatsoever, to my beloved husband José Castañer for his entire use and privilege and, if necessary, he may sell it as he wishes, because the property belongs to him in its entirety.

"2. But it is my wish that he always take care of my dear sister Sally Dávila, of Juan Domingo, Bayamón, and that at the death of my husband, the property revert to my sister Sally without any sacrifice or obstacle.

"All the jewels which I may own at my death should go to the hands of my sister Sally as well as my personal belongings.

"3. To Gloria Castañer of San Sebastián, Puerto Rico the sum of five (5) dollars.

"4. To Mrs. Milagros Castañer Sánchez, likewise the sum of five (5) dollars.

"5. It is my wish that I be buried in Calere where Margaret lies.

"6. In the event that José Castañer and Sally Dávila predecease me, then I bequeath all my property to Dr. Martínez' Cancer Hospital."

The real ground on which the trial court denied the protocolization of the will is that the latter is not signed by the testatrix. The petitioner alleges that since the will is writ-

ten in the testatrix's own handwriting, the introductory words: "I, Adele Bandler Castañer . . ." are equivalent to the signature required by § 637 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 2161, which provides with respect to a holographic will, in its pertinent part: "In order that such will be valid, it shall be *written* in its entirety and *signed* by the testator, who shall state the year, month and day in which it is executed."

 The signature—says Puig Peña—is what distinguishes the complete will from the draft of a will: V-I Puig Peña, *Tratado de Derecho Civil Español* (ed. of the Editorial Revista de Derecho Privado, 1954), 242, par. 34.

The problem presented in this case, within the pure theory of Civil Law, is that everything that appears below the signature in a will, the so-called "additions" are considered as nonexistent unless the additions in turn are duly dated and signed—Puig Peña, *op. cit. supra* at 226–27. If we had to consider the introductory words: "I, Adele Bandler Castañer" as the signature of the will, the remainder of the testamentary autography would become an "addition" and as such automatically annulled for not having been dated and signed again.

Now then, the provision of the second paragraph of § 637 of our Code—equivalent to § 688 of the Spanish Civil Code— is so conclusive, the sequence of the testamentary procedure is so well described within said provision: first, the text and second, the signature, that there is no margin to assume that the signature can be placed first and the text of the will below. According to Puig Peña, from § 688, par. 3 of the Spanish Civil Code (§ 637 par. 2 of ours): "the principle to be extracted is that the signature should conclude, close or end the will without the words written thereafter forming part thereof" (t. at 246).

It is undeniable that the juridical term "signature" has a calligraphic individuality different from the mere writing of the proper name by hand, for other purposes different

from the solemn subscription of the last will of a document. The trial judge adopted as his own the definition of "signature" contained in the Judgment of January 5, 1924 of the Supreme Court of Spain: "By the signature of a person is understood that which he, in all the acts of his life, in the most important and solemn ones as well as in the ordinary ones, in his relationship with other persons, usually *puts at the bottom* of his papers."

The signature as something different from the writing by hand of the proper name forms part of the special small system of authenticity that the Code has intended to provide for the case of a holographic will. Every holographic will needs to be "signed by the testator" and the signature can be no other than that which shows a last subscription of the testamentary will, after the whole text preceding the signature is known and considered. This requirement does not form part of a testamentary ritual which might be repugnant at some other time, but a sound requirement to the exception represented by the holographic will. Let us hear Puig Peña on this last point: "This strictness of the jurisprudence with respect to the necessariness of the signature in the holographic will has a logical explanation in view of the importance that it has in these forms of testating. Apart, actually, from the exclusion which because of its nature is made in this will of subscribing parties or attesting witnesses thereby overemphasizing the importance of the signature . . . it should be kept in mind that the latter constitutes a way of integration of the testamentary will, and particularly, the fundamental declaration that the autographed writing, actually corresponds to the person who has done it. . . . Bearing this in mind as well as other considerations of evident prominence, as for example, that it constitutes a qualified element of the identity and capacity of the testator, at the time of stating the declaration of his will, all the legislations that have accepted this mode of testating, require the subscription of the document by the person

issuing it, giving the requirement the value of a *sine qua non* condition of its validity, exactly the same as has been done by the decisions of our highest Court." Puig Peña, *op. cit. supra* at 242.

In view of the foregoing, the writ issued is quashed.